IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita Leeson Weinshienk

Civil Action No. 08-cv-01235-ZLW-KMT

JASON PECCI,

    Applicant,

v.

B. SLOAN (WARDEN, BCCF), and,
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

---

ORDER OF DISMISSAL WITH PREJUDICE

---

The matter before the Court is Applicant Jason Pecci's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (Application) (Doc. No. 3). The Court has reviewed carefully the parties' briefing, the applicable legal authority, and the entire state court record, and determines that oral argument would not assist the Court in its adjudication.

**I.    Background**

    **A.    Procedural Background**

Applicant Jason Pecci was initially charged in Larimer County, Colorado with one count of first degree murder and one count of felony menacing for the April 1, 2001, fatal shooting of Marc Bender, who was allegedly romantically involved with Applicant's estranged wife. Pursuant to a plea agreement, Applicant pled guilty on September 13,

2001, to an amended count of second degree murder, a class 2 felony, in exchange for the state's dismissal of the first degree murder and felony menacing charges. The sentencing range for the second degree murder charge was 16 to 48 years. Applicant was sentenced to the maximum, 48 years, with five years parole, and is currently serving that sentence in the Bent County Correctional Facility (BCCF) in Las Animas, Colorado.[1] A 2003 Colorado Department of Corrections Time Computation Report states that Applicant will be eligible for parole on October 17, 2024.[2]

Applicant appealed his sentence to the Colorado Court of Appeals, arguing that the trial court had abused its discretion by imposing the maximum sentence despite numerous, undisputed mitigating factors, such as Applicant's lack of criminal history, evidence of his good character, his service in the military, his education and stable employment, his supportive family, and his expression of remorse.[3] The Colorado Court

---

[1] Plaintiff initially named "Fred Figuera (Warden NFCF)" as one of the two Respondents in this action. On August 25, 2008, Applicant was ordered to name the warden of the facility where he is currently housed in place of Respondent Figuera (see Doc. No. 10), and Applicant has in some, but not all, of his subsequent filings named "B. Sloan (Warden BCCF)" as a Respondent. The Court affirms that the case caption has been amended and is properly set forth on this Order.

[2] Record 000119.

[3] See Answer, Ex. A (Opening Brief Of Defendant-Appellant in People v. Pecci, Colorado Court of Appeals Case No. 01CA2512) (Doc. No. 39-1).

of Appeals affirmed the sentence.[4]  Applicant filed a Petition For Writ Of Certiorari in the Colorado Supreme Court, which was denied on July 28, 2003.[5]

On November 26, 2003, Applicant filed in the state trial court a Motion For Reconsideration Of Sentence under Colo. R. Crim. P. 35(b),[6] which was denied on July 21, 2004.[7]

On June 7, 2005, Applicant filed a Petition For Postconviction Relief Pursuant To Crim. P. 35(c) in the state trial court, arguing that his trial counsel's alleged failure to investigate a provocation defense constituted ineffective assistance of counsel in violation of the Colorado Constitution and the Sixth Amendment to the United States Constitution, and that Applicant's guilty plea was not knowing, intelligent, and voluntary because the trial court failed to ensure an adequate factual basis [8]  The petition was denied by the trial court without a hearing on September 13, 2005.[9]  Applicant

---

[4] Answer, Ex. B (February 27, 2003, Opinion in People v. Pecci, Colorado Court of Appeals Case No. 01CA2512) (Doc. No. 39-2).

[5] Answer, Ex. C (Petition For Writ Of Certiorari in Pecci v. People of the State of Colorado, Colorado Supreme Court Case No. 03SC247) (Doc. No. 39-3); Answer Ex. D (July 28, 2003, Order Of Court in Pecci v. People of the State of Colorado, Colorado Supreme Court Case No. 03SC247) (Doc. No. 39-4).

[6] Record 000113-000128.

[7] Id. 000129-000130.

[8] Id. 000144-0000416.

[9] Id. 000423-000429.

appealed,[10] and the Colorado Court of Appeals affirmed on December 6, 2007.[11] Applicant filed a Petition For Writ Of Certiorari in the Colorado Supreme Court, which was denied on May 12, 2008.[12]

On September 15, 2008, Applicant filed a second Colo. R. Crim. P. 35(c) motion in the state trial court, which was denied by the trial court as successive on February 20, 2009.[13] The Court has not located in the state court Record any filings indicating that Applicant appealed the February 20, 2009, Order.

### B. Factual Background

The Colorado Court of Appeals' Order of December 6, 2007, sets forth the underlying facts of this case as follows.

> The presentence report revealed the following facts: On the night of the shooting, the defendant was at a bar and saw his estranged wife with the victim. The defendant spoke briefly with both of them and left. However, as he later drove by the bar, he decided there was "no way [his] wife would not know how angry he was." He then returned to the bar parking lot and saw the two leaving. He parked his truck behind his wife's car.

---

[10] Answer, Ex. F (Opening Brief Of Defendant-Appellant in People v. Pecci, Colorado Court of Appeals Case No. 05CA2168) (Doc. No. 39-6).

[11] Answer, Ex. G (December 6, 2007, Order in Pecci v. People of the State of Colorado, Colorado Court of Appeals Case No. 05CA2168) (Doc. No. 39-7).

[12] Answer, Ex. H (Petition For Writ Of Certiorari in Pecci v. People of the State of Colorado, Colorado Supreme Court Case No. 08SC168) (Doc. No. 39-8); Answer, Ex. I (May 12, 2008, Order Of Court in Pecci v. People of the State of Colorado, Colorado Supreme Court Case No. 08SC168) (Doc. No. 39-9). Applicant was represented by counsel in all proceedings until the filing of the Petition For Writ Of Certiorari, at which point Applicant began to appear *pro se*.

[13] Record 000477-00483, 000494-000496.

> The defendant's wife got out of her car and began arguing with the defendant. He removed a revolver from under the seat of his truck and pointed it at his wife's face. His wife went back to her car and told the victim about the gun. When the victim got out of his car, and, along with the defendant's wife, approached the defendant, the defendant got out of the truck and fired a shot into the ground in front of the victim. The defendant's wife ran into the bar. At that point the defendant fired a shot at the victim which struck him in the chest and killed him.[14]

Factual findings by the state court are presumed to be correct, and Applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.[15]

## II.     Section 2254 Application

Applicant filed the present Application on June 10, 2008, setting forth three claims for relief, each with several subparts. Claims two and three, and portions of claim one, were dismissed on November 13, 2008, for failure to exhaust administrative remedies.[16] As a result, one claim remains in this case, the first claim for relief for ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution based on the following pleaded allegations: that Applicant's trial counsel (i) failed to investigate ballistics and physical circumstances of

---

[14] Answer, Ex. G (December 6, 2007, Order in <u>Pecci v. People of the State of Colorado</u>, Colorado Court of Appeals Case No. 05CA2168) (Doc. No. 39-7) at 3-4 of 19.

[15] 28 U.S.C. § 2254(e)(1). While Applicant has contended that the evidence indicated that he in fact did not speak with Bender inside the bar (<u>see</u> Doc. No. 31 at 7 of 23), this factual distinction does not impact the issues before the Court on this Application.

[16] <u>See</u> Order of November 13, 2008 (Doc. No. 15).

5

the homicide, (ii) misstated physical circumstances and "true range" to the court, (iii) did not determine mental state based on an objective standard, (iv) failed to investigate a plausible defense based on Applicant's statements, and (v) failed to present mitigating evidence about victim/defendant interaction.[17] The Court reads the allegations as falling within the general contention that trial counsel failed to adequately investigate a potential provocation defense by (1) failing to obtain ballistics testing to determine the distance between Applicant and Bender at the time of the shooting, and (2) failing to obtain a psychological evaluation of Applicant.

As articulated in his state court filings, Applicant contends that, had his trial counsel provided effective assistance by adequately investigating a provocation defense, there is a reasonable probability that Applicant would have rejected the plea offer, gone to trial, and received, at most, a conviction of a class three felony based upon a successful provocation defense.[18] In order to establish a provocation or "heat of passion" defense, the defendant must prove that "(1) the act causing the death was performed upon a sudden heat of passion; (2) caused by a serious and highly provoking act of the intended victim; (3) which was sufficient to excite an irresistible passion in a reasonable person; and (4) between the provocation and the killing, an insufficient interval of time passed for the voice of reason and humanity to be heard."[19]

---

[17] See id.; see also Order of August 25, 2008 (Doc. No. 10).

[18] See Answer, Ex. F (Opening Brief Of Defendant-Appellant in People v. Pecci, Colorado Court of Appeals Case No. 05CA2168) (Doc. No. 39-6) at 8 of 25, 12 of 25.

[19] Cassels v. People, 92 P.3d 951, 956 (Colo. 2004).

## III.     Legal Standard

A federal district court reviewing a 28 U.S.C. § 2254 habeas petition does not re-examine the state court's determination of state-law questions.[20] Rather, "in conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."[21]

Further, an application for a writ of habeas corpus by a person in state custody may be granted only where the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established federal law," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[22] Thus, the court must first determine "whether the petitioner seeks to apply a rule of law that was 'clearly established' by the Supreme Court at the time the conviction became final."[23] If the answer is yes, then the court goes on to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law.   A state court decision is "contrary to" clearly established federal law where it (1) "applies a rule that contradicts the governing law set forth in Supreme Court cases," or (2) "confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a

---

[20]Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

[21]Id.

[22]28 U.S.C. § 2254(d)(1), (2).

[23]Valdez v. Ward, 219 F.3d 1222, 1229 (10th Cir. 2000); see also House v. Hatch, 527 F.3d 1010, 1018 (10th Cir. 2008).

7

result different from [that] precedent."[24] A state court decision is "an unreasonable application of" clearly established federal law where it is "objectively unreasonable," meaning that "most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."[25]

Because Applicant is proceeding *pro se,* the Court construes his filings liberally and holds them to a less stringent standard than filings drafted by lawyers.[26] However, the Court does not act as an advocate for a *pro se* litigant.[27]

 IV.    **Exhaustion of Administrative Remedies and Timeliness**

This Court has previously ruled that Claim One, subparts (i)-(v), were exhausted in state court,[28] and Respondents do not argue otherwise. Respondents also do not dispute that the present Application is timely under the one-year statute of limitations set forth in 28 U.S.C. § 2244.

---

[24]Maynard v. Boone, 468 F.3d 665, 669 (10th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 404 (2000)) (internal quotation marks and brackets omitted).

[25]Id.

[26]Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

[27]Id.

[28]See Order of November 13, 2008 (Doc. No. 15); see also Order of August 25, 2008 (Doc. No. 10).

**V.    Analysis**

   **A.    Ineffective Assistance Of Counsel**

The Sixth and Fourteenth Amendments to the United States Constitution guarantee criminal defendants the effective assistance of counsel.[29] A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.[30]

"[T]he proper standard for attorney performance is that of reasonably effective assistance."[31] Thus, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."[32] In order to satisfy the "prejudice" requirement in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[33]

---

[29] Strickland v. Washington, 466 U.S. 668, 706 (1984) (Marshall, J., dissenting).

[30] Id. at 688.

[31] Id. at 687.

[32] Id. at 687-88.

[33] Hill v. Lockhart, 474 U.S. 52, 59 (1985).

9

In <u>Strickland v. Washington</u>, the United States Supreme Court wrote that:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.[34]

Where, as here, a litigant asserts ineffective assistance of counsel based on an alleged failure to adequately investigate, the Court must apply <u>Strickland</u>'s conclusion that:

> strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.[35]

In accordance with the Court's Order of August 25, 2008,[36] the Court liberally construes the remaining claims in this case as claims that Applicant's trial counsel failed

---

[34] <u>Strickland</u>, 466 U.S. at 688 (internal quotation marks and citations omitted).

[35] <u>Id.</u> at 690-91.

[36] <u>See</u> Order of August 25, 2008 (Doc. No. 10) at 7.

to adequately investigation a provocation defense. Again, Applicant's assertions of failure to investigate appear to fall into two categories.

### B. Failure to Obtain Ballistics Testing

Applicant claims that his trial counsel provided ineffective assistance by not consulting with a ballistics expert who, Applicant asserts, would have opined that Bender was less than three feet from Applicant at the time of the shooting, which would have bolstered a provocation defense by supporting Applicant's statements that Bender was moving toward Applicant when Applicant shot him.[37]

In its Opinion of December 6, 2007, the Colorado Court of Appeals stated that

> the defendant claims defense counsel rendered deficient performance by not consulting with a forensic expert in firearm ballistics, who would have provided evidence the victim was less than three feet from the defendant. However, the defendant's postconviction motion reveals trial counsel had similar information from eyewitnesses and from the investigating officers.[38]

The state court record includes a May 21, 2001, transcript of testimony by Investigator Steve Koenig of the Larimer County Sheriff's Office, who responded to the scene of the shooting on April 1, 2001. Investigator Koenig testified that on the night of the shooting he interviewed a witness named Greg Gatlin, who had seen or heard the shot which

---

[37]See Record 000155. The Court construes Applicant's allegations that his attorney (1) failed to investigate ballistics and physical circumstances of homicide, (2) misstated physical circumstances and "true range" to the court, (3) failed to investigate plausible defense based on Petitioner's statements, and (4) failed to present mitigating evidence of victim/defendant interaction as falling within this category.

[38]Answer, Ex. G (December 6, 2007, Order in Pecci v. People of the State of Colorado, Colorado Court of Appeals Case No. 05CA2168) (Doc. No. 39-7) at 9-10 of 19.

11

killed Marc Bender and saw Bender fall while Applicant was pointing the gun at him.[39] Gatlin told Investigator Koenig that Applicant and Bender were approximately four feet apart at the time.[40] Cari Pecci, Applicant's estranged wife, stated to Investigator Koenig that she and Applicant initially stood approximately three feet apart, with Bender on her left. She stated that Bender then stepped closer to Applicant, at which point Applicant fired the first shot into the ground. Cari Pecci then turned and ran into the bar and then heard two more shots.[41] Applicant's trial counsel's notes from an interview with Applicant which appear to be dated April 11, 2001, indicate that Applicant told his counsel that Bender "stepped up to me really aggressively," that Applicant then fired a shot into the ground, at which point Bender then "pushed into" Applicant again, and that Applicant then "stepped back" and pulled the trigger.[42]

A statement by Joseph D. Snyder, MAAFS, of Forensic Science Consultants, offered in support of Applicant's June 7, 2005, Rule 35(c) motion, notes a pathology report indicating that the shot which killed Bender was a "close-range" but not a "contact" shot.[43] Snyder states that the only way to determine the actual distance would be to examine the clothing for nitrites (powder substances).[44] Applicant was unable to

---

[39] Record 000170-000171.

[40] Id. 000171.

[41] Id. 000176; see also id. 000224.

[42] Id. 000252; see also id. 000257.

[43] Id. 000384.

[44] Id.

12

perform this additional testing in support of his Rule 35(c) motion because the trial court denied his motion for release of the required evidence.[45] However, Applicant argued in his Rule 35(c) motion that Snyder's "potential conclusion that the position of the parties at the time of the second shot was less than 3 feet provides scientific corroboration of Mr. Pecci's statement that Mr. Bender was moving toward him at the time of the second shot."[46]

However, as discussed above, information available at the time of Applicant's plea indicated that the shot that killed Bender was fired at close range - less than three to four feet - and that Bender had been moving toward Applicant immediately before he was shot. The Court applies, as it must, a heavy measure of deference to Applicant's counsel's decision not to retain a ballistics expert in order to repeat that same information. Having done so, the Court concludes that the decision was not objectively unreasonable under Strickland. Further, Applicant has not shown that the failure to retain a ballistics expert resulted in any prejudice under Strickland, since, again, information already existed indicating that Bender was within a few feet of Applicant and moving toward him immediately before he was shot. Applicant has not shown a reasonable probability that he would not have pleaded guilty and instead would have insisted on going to trial if his counsel had obtained a ballistics report indicating that

---

[45]Id. 000155, 000396-000397.

[46]Record 000155. While Snyder's report indicates that the shot was fired at close range, it does not in fact indicate any "potential conclusion" that the shot was fired at a specific distance of less than three feet.

13

Bender was less than three feet from him at the time of the fatal shot. The state court's determination of the issue was not contrary to, and did not involve an unreasonable application of, clearly established federal law.

### C. Failure to Obtain Psychological Evaluation

Applicant also contends that his trial counsel's performance was deficient because she did not obtain a psychological evaluation of Applicant, which, he asserts, would have uncovered evidence supporting a provocation defense.[47]

In support of his Rule 35(c) motion, Applicant submitted to the state court an April 18, 2005, report by psychologist Spencer Friedman EdD, obtained by Applicant's post-conviction counsel.[48] Dr. Friedman evaluated Applicant in three meetings in which Applicant participated in diagnostic interviews and psychological testing.[49] Dr. Friedman reported that his review of Applicant's history "reflected a longstanding pattern of chronic pessimism and anticipated failure, an inclination to feel victimized by his environment and events that he perceived were beyond his control," and an "inability to manage his angry impulses."[50] While the diagnostic test results did not indicate that Applicant suffered from a Major Depressive disorder, they did indicate that he

---

[47] The Application pleads that Applicant's counsel "did not determine mental state per objective standard of reasonableness for practice in that district," referencing Applicant's Rule 35(c) motion. Application (Doc. No. 3) at 6 of 11.

[48] Record 000372-000381.

[49] Id. 000372.

[50] Id. 000377.

experienced depressive symptoms and schizoid, avoidant, and self-defeating and negativistic personality characteristics.[51]  Dr. Friedman opined that Applicant's "already diminished self-esteem and frustration" "significantly interfered with his ability to interpret [the events preceding the shooting] in a non-threatening or other than humiliating manner."[52]  Applicant's "general coping style had been to either avoid or withdraw from threatening situations and to internalize his angry thoughts and emotions. In this instance he was unable to manage those impulses and he began to feel increasingly overwhelmed."[53]  Dr. Friedman's report concludes:

> Mr. Pecci's psychological adjustment history and particular personality characteristics ultimately combined to become significant factors that prompted his behavior in what he considered to be a highly provoking experience.  He ultimately found himself feeling more emotionally escalated than he was able to manage or control.  His misperceptions regarding the motivations for his wife's behavior were significant factors that brought him to a heightened emotional state.  He's not an aggressive individual and he likely over-responded to or misperceived the victim's intentions.
>
> Based upon my evaluation of the facts of this case as they have been described to me by Mr. Pecci, by my review of the investigative reports, what I have learned about Mrs. Pecci's behavior and Mr. Bender's interaction with Mr. Pecci, it's my professional opinion that any reasonable person's

---

[51]Id.

[52]Id. 000379.

[53]Id.

15

> emotions and passions could have been inflamed by the set
> of variables and fact associated with these circumstances.[54]

Applicant has argued that Dr. Friedman's report shows that if Applicant's trial counsel had obtained a psychological evaluation of Applicant, that evaluation would have provided evidence to support a provocation defense. However, even assuming that trial counsel's failure to obtain a psychological evaluation of Plaintiff fell below an objective standard of reasonableness, and the Court reaches no such conclusion herein, there has been no showing of prejudice. In order to satisfy the first element of a provocation defense, that "the act causing the death was performed upon a sudden heat of passion,"[55] there must be evidence that "the particular defendant, *in fact*, acted upon a sudden heat of passion."[56] This element "embodies a subjective inquiry in that it permits the defendant to demonstrate that he or she, in fact, acted upon a sudden heat of passion."[57] However, the third element of a provocation defense requires that a serious and highly provoking act of the victim "was sufficient to excite an irresistible passion in a reasonable person'"[58] "Reasonable person" in this context means "an objectively reasonable person and not a subjectively reasonable one possessing the

---

[54] Id. 000380.

[55] Cassels, 92 P.3d at 956.

[56] People v. Dooley, 944 P.2d 590, 593-94 (Colo. App. 1997).

[57] Id. at 594.

[58] Cassels, 92 P.3d at 956.

16

individual defendant's personality traits or defects."[59]  The evidence must establish that "an objectively reasonable person would have similarly suffered an irresistible passion to kill."[60]

While Dr. Friedman employed the phrase "reasonable person" in his report, it is clear from his discussion that his conclusion was, in fact, that *a person with* Applicant's specific "psychological adjustment history and particular personality characteristics" could have been emotionally inflamed by the circumstances on April 1, 2001.  The report provides no evidence that, and does not support a conclusion that, "an *objectively* reasonable person would have similarly suffered an irresistible passion to kill."[61]  Applicant can only speculate that another report, by another psychologist whom his trial counsel might have retained, would have reached such a conclusion.  However, mere speculation is insufficient to support a constitutional claim for ineffective assistance of counsel.[62]  Applicant has failed to establish a claim for ineffective assistance of counsel based on counsel's failure to obtain an psychological evaluation of Applicant.

## VI.  Request for Appointment of Counsel

---

[59] Dooley, 944 P.2d at 594.

[60] Id. at 594.

[61] Id. (emphasis added).

[62] See U.S. v. Boone, 63 F.3d 323, 327 (10th Cir. 1995).

Within his June 4, 2009, "Reply" brief (Doc. No. 41), Applicant made a request that counsel be appointed to represent him on this Application. Applicant was required to make any such request within a separately-filed motion, which he did not do.[63] In any event, Applicant has failed to satisfy his burden of demonstrating that "there is sufficient merit to his claim to warrant the appointment of counsel."[64] Applicant's claims, which were articulated not only in Applicant's *pro se* filings in this Court but also by his postconviction counsel in the state court proceedings, have been adequately presented and liberally construed, but lack merit for the reasons set forth above.[65] Therefore, the Court, in its broad discretion,[66] will deny the request for appointment of counsel.

Accordingly, for the foregoing reasons, it is

ORDERED that the Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (Doc. No. 3) is denied, and this action is dismissed with prejudice. It is

FURTHER ORDERED that this action is dismissed with prejudice, the parties to pay their own costs and attorney's fees. It is

FURTHER ORDERED that Applicant's request for the appointment of counsel is denied. It is

---

[63]See D.C.COLO.LCivR 7.1C.

[64]Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1115 (10th Cir. 2004).

[65]See id (setting forth relevant factors for court's consideration).

[66]See Long v. Shillinger, 927 F.2d 525, 527 (10th Cir. 1991) ("the district court has broad discretion to appoint counsel for indigents . . . .").

FURTHER ORDERED that a certificate of appealability shall not issue because Applicant has not made a substantial showing of the denial of a constitutional right.[67]

DATED at Denver, Colorado, this 28th day of September, 2010.

BY THE COURT:

*[signature: Zita Leeson Weinshienk]*

_____

ZITA LEESON WEINSHIENK, Senior Judge
United States District Court

---

[67] 28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 cases 11(a).